UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:20-CV-12189-RWZ

ELIZABETH DASILVA MONTEIRO

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration

MEMORANDUM & ORDER

March 23, 2022

ZOBEL, S.D.J.

Plaintiff Elizabeth Dasilva Monteiro ("Plaintiff") appeals the final decision by the Commissioner of the Social Security Administration ("Commissioner") that upholds an Administrative Law Judge's ("ALJ") denial of her application for social security disability insurance benefits and supplemental social security income. Plaintiff contends that the ALJ erred by (1) finding the opinion of Sandra Looby-Gordon, M.D. unpersuasive, (2) failing to evaluate primary headache disorders in accordance with Social Security Ruling ("SSR") 19-4p, (3) failing to account for her physical impairments due to her left ankle disorder with posterior tibia tendon dysfunction starting in September 2019, and (4) failing to properly evaluate the limiting effects of her pain symptoms caused by migraines and the left ankle disorder. Docket # 16.

I. **Background**

Plaintiff asserts disability beginning May 1, 2017 and filed an application for benefits on September 18, 2018. Her claim was first denied on December 12, 2018, and

1

again upon reconsideration on May 23, 2019. ALJ Sujata Rodgers then held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert testified. On June 2, 2020, the ALJ found Plaintiff not disabled from the alleged onset date through the date of the decision. On October 28, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, which then became the final decision of the Commissioner. Plaintiff brought this action for reversal thereof under 42 U.S.C. § 405(g) and 1383(c)(3).

### A.   Applicable Statues and Regulations

To receive social security disability benefits,[1] a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A); see also 20 C.F.R. § 404.1505(a).

The ALJ analyzes whether a claimant is disabled using an established "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4)(i)–(v). Under this framework, the ALJ first determines whether the claimant is currently engaging in substantial gainful work activity. Id. § 404.1520(a)(4)(i). If not, then at step two, the ALJ decides whether

---

[1] As the Commissioner notes, the relevant statute and implementing regulations regarding disability benefits (i.e., Title II of the Social Security Act and 20 C.F.R. pt. 404) and supplemental income (i.e., Title XVI of the Social Security Act and 20 C.F.R. pt. 416) are substantially identical, with certain exceptions not relevant to this case. Accordingly, the Court will only cite to the disability benefit statutes and regulations for simplicity. See Docket #20 at 5 n.1 (citing Barnhart v. Thomas, 540 U.S. 20, 24 (2003) ("For simplicity's sake, we will refer only to the Title II provisions, but our analysis applies equally to Title XVI.")).

the claimant has a "severe" medical impairment or impairments, i.e., at least one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. § 404.1520(a)(4)((ii), (c). If the claimant has a severe impairment or impairments, then the ALJ considers, at step three, whether such impairments meet or equal an entry in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, together with the duration requirement. Id. § 404.1520(a)(4)(iii). If so, then the claimant is considered disabled and the analysis ends. Id. If not, before moving to step four, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [all of her] limitations." Id. §§ 404.1520(a)(4)(iv), 404.1545(a)(1). At step four, the ALJ determines whether the claimant's RFC allows her to perform her past relevant work. Id. § 404.1520(a)(4)(iv). If she has the RFC to perform her past relevant work, then she is not disabled. Id. If she does not, then the ALJ decides, at step five, whether she can do other work in light of her RFC, age, education, and work experience. Id. § 404.1520(a)(4)(v). If the claimant can, she is not considered disabled; otherwise, she is. Id. "Once the applicant has met ... her burden at Step 4 to show that ... she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 404.1512(b), 404.1560(c)(2).

B.     The ALJ's Decision

In her June 2, 2020 written decision, the ALJ ruled that Plaintiff was not disabled from the alleged onset date of May 1, 2017 through the date of the decision. R. 16.[2] At

---

[2] "R." refers to the Social Security administrative record, which was filed in this appeal at Docket # 12-2.

3

the first and second steps of the analysis, she found that Plaintiff had not engaged in gainful activity since her alleged onset date and that she had the following severe impairments: spine disorder, left ankle disorder with posterior tibia tendon dysfunction, obesity, asthma, and depressive disorder. R. 18. The ALJ nonetheless held at step three that Plaintiff "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 18. Before moving to step four, the ALJ determined Plaintiff's RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She could frequently kneel and crouch. She could occasionally balance and stoop. She could never crawl. She must avoid concentrated exposure to extreme heat and humidity. She must avoid concentrated exposure to pulmonary irritants such as dust, gas, fumes, and poor ventilation. She could understand, remember, and carry out simple instructions for 2-hour intervals over the course of an 8-hour workday and 40-hour workweek.

R. 21. In reaching this conclusion, the ALJ considered a range of evidence, starting with Plaintiff's medical record and self-reported symptoms. Plaintiff had disclosed symptoms of both physical and mental impairments, including back and leg pain, fatigue, headaches, and depression. R. 21-25. After walking through the evidence in the record, the ALJ concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms[,]" her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 25.

The ALJ then considered the medical opinions and prior administrative medical findings. Regarding Plaintiff's claimed physical impairments, the ALJ found that the assessment by Dr. Palmeri, the state agency's medical expert at the reconsideration

4

stage, to be supported by the whole record and thus persuasive. R. 25. This included his assessed "limitations to the light exertional level with postural and environmental limitations based on [Plaintiff's] lower back pain and history of asthma" and limitations to Plaintiff's ability to stand and walk due to her left ankle impairment. R. 25. However, she was not persuaded by the conclusion of Dr. Chevlan, the state agency's medical expert at the initial stage, "as no severe physical impairments were assessed[] due to the limited evidence for review when the assessment was made." R. 25. She also rejected the opinions submitted by Dr. Looby-Gordon, one of Plaintiff's treating physicians, in May 2020 as they were "inconsistent with the record as a whole" in light of the "limited findings upon physical examination for chronic left leg edema by any examining provider, medical records by Dr. [Looby-]Gordon noting [Plaintiff] ambulated normally during her examinations, and [Plaintiff's] reported activities of daily living." R. 25-26.

With regards to Plaintiff's claimed mental impairments, the ALJ was not convinced by the state agency's psychological experts' assessments as they were "based on the limited medical evidence for review at the time of these assessments." R. 26. However, she found the assessment by consultative examiner Dr. Scott Haas to be generally persuasive, including that Plaintiff appeared capable of comprehending information, completing certain tasks, learning new tasks, interacting with the general public, responding appropriately to supervision, coping with novel and unexpected situations, and other relevant behaviors. R. 26. The ALJ, however, made a more restrictive finding regarding Plaintiff's attention and concentration than Dr. Haas had, specifically that she was limited to "simple and routine tasks overall based on both factors of her physical pain and reported increased symptoms of depression." R. 26.

Finally, based on Plaintiff's own testimony, the ALJ determined that her reported daily activities "are not generally consistent with her allegations of disabling physical and mental impairments." R. 28. For example, Plaintiff stated in her examination with Dr. Hass that "she was able to get up and get her children ready for school, cook meals, make her bed, do dishes, read the newspaper, and go grocery shopping." R. 28. She also reported being able to attend church services and other events as well as assisting non-English speaking neighbors at appointments in the area. R. 28. The ALJ concluded that Plaintiff's testimony of her more limited range of daily activity was outweighed by (1) the inability to objectively verify those allegations with a reasonable degree of certainty, and (2) the difficulty in attributing that more restrictive degree of limitation to Plaintiff's "medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors" discussed by the ALJ in the decision. R. 28.

At the fourth step of the sequential evaluative process, the ALJ concluded that "[t]he demands of [Plaintiff's] past relevant work exceed the above residual functional capacity," thus Plaintiff "is unable to perform past relevant work as actually or generally performed." R. 29. However, at step five, the ALJ concluded that, "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [she] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 31. Accordingly, she found Plaintiff not disabled. R. 31.

### C.     The Appeal

Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied review on October 28, 2020. The ALJ's decision then became the final decision of the Commissioner, and Plaintiff brought this case under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal thereof.

## II. Standard of Review

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence. 42 U.S.C. § 405(g); Seavey, 276 F.3d at 9. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). So long as the Commissioner's determinations are "supported by substantial evidence," they must be affirmed, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). Further, resolving credibility issues "and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)). Questions of law are reviewed *de novo*. Seavey, 276 F.3d at 9.

## III. Discussion

Plaintiff asserts that the ALJ committed reversible error for four reasons: (1) Dr. Looby-Gordon's opinion was improperly discounted as it was supported by substantial evidence; (2) the ALJ failed to evaluate primary headache disorders in accordance with SSR 19-4p; (3) the RFC does not sufficiently account for Plaintiff's physical impairments due to her left ankle disorder; and (4) the ALJ improperly evaluated the limiting effects of Plaintiff's pain symptoms caused by migraines and the left ankle disorder. Docket # 16.

### A. The ALJ Properly Considered Dr. Looby-Gordon's Opinion and Accounted for the Impairments Caused by Plaintiff's Left Ankle Disorder

7

Because Plaintiff's first and third arguments noted above are related, they will be addressed together.  Plaintiff first argues that the ALJ's rejection of Dr. Looby-Gordon's opinion—that Plaintiff's chronic leg pain and swelling limited her ambulation and ability to perform daily activities and thus resulted in greater limitations on work than what the ALJ found in the RFC—was error in light of the record as a whole.  Docket # 16 at 7-10; Docket # 21 at 1-3.  Plaintiff contends that Dr. Looby-Gordon's opinion is supported by substantial evidence in the record from September 2019 through the date of decision and thereafter, and that Dr. Palmeri's opinion, which the ALJ found persuasive, is not.  Id.  Additionally, Plaintiff argues that the ALJ, in determining the RFC, erred by failing to adequately account for Plaintiff's physical impairments due to her left ankle disorder with posterior tibia tendon dysfunction starting in September 2019.  Accordingly, the ALJ's decision is not supported by substantial evidence.  Docket # 16 at 13-16; Docket # 20 at 6-8.  These contentions are not supported by the record.

During the RFC determination, ALJs must consider "all of the relevant medical and other evidence" in the record.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  Furthermore, ALJs "must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Harrison v. Saul, No. 20-cv-10295-LTS, 2021 WL 1153028, at *5 (D. Mass. Mar. 26, 2021) (quoting SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)).  When determining what weight to assign a medical source opinion, the ALJ must consider the opinion's "supportability, consistency, relationship, specialization, and other factors."  Id. (citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)).  "The most important factors to be considered when the

8

Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate." Id. (citation omitted). "ALJs must consider the persuasiveness of all medical opinions in a claimant's case record and need not defer to the medical opinions of a claimant's treating physicians." Id. (citing 20 C.F.R. § 404.1520c). This means that "[a] medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not ... persuasive regardless of who made the medical opinion." Id. (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854). "An ALJ's decision to accord a treating physician's opinion with little weight will be sustained on review so long as one of the reasons given by the ALJ is proper and adequately supported." Id. at *6 (citations omitted).

The ALJ concluded that Dr. Looby-Gordon's conclusions and limitations in the assessment "are inconsistent with the record as a whole." R. 26. This record consisted of the "[Plaintiff's] limited findings upon physical examination for chronic left leg edema by any examining provider, medical records by Dr. [Looby-]Gordon noting the [Plaintiff] ambulated normally during her examinations, and the [Plaintiff's] reported activities of daily living." R. 26. The ALJ drew this conclusion notwithstanding other record evidence tending to support Dr. Looby-Gordon's conclusions, which she acknowledged in her decision, including Plaintiff's reported left ankle pain and swelling in September 2019, x-rays of the left foot taken in November 2019, an MRI of the left foot taken in February 2020, the referral to and notes taken by Dr. David Negron, a podiatrist, and Dr. Negron's recommendation of customized bracing. R. 23-24, 26. The ALJ found that "[t]he record does not show any continuous issues with [Plaintiff's] left ankle and foot prior to [the fall

9

of 2019]," and "[t]hough [Plaintiff] reported she has significantly limited ability to stand and walk due to her leg and back pain, the record shows no evidence of any injections, surgeries, or pain management referrals for her back and leg pain," and no "examination findings or treatment, including medications for leg swelling that would require her to elevate her legs to the level she indicated in her testimony." R. 27-28. The ALJ therefore appropriately addressed the record evidence tending to support Dr. Looby-Gordon's findings and opinions, including the medical evidence relied on by Dr. Looby-Gordon, but ultimately found that those findings and opinions were not consistent or supported by the record *as a whole* during the entire relevant period.

That Dr. Palmeri's assessment did not address the September 2019 and later evidence, which Dr. Looby-Gordon's assessment did, does not undermine the ALJ's conclusion. The ALJ found Dr. Looby-Gordon's findings unpersuasive in light of the other evidence in the record relating to the September 2019 and later time period and acknowledged that although she found an additional severe limitation to Plaintiff's left ankle, which Dr. Palmeri did not find, "the record does not support any more restrictive limitations in the [Plaintiff's] ability to stand and walk than were identified by Dr. Palmeri." R. 25. Plaintiff does not argue that Dr. Palmeri's assessment of the pre-September 2019 period is not supported by substantial evidence. Plaintiff's argument therefore essentially asks the Court to reweigh the evidence, which is not for the Court to do. See, e.g., Rodriguez Pagan, 819 F.2d at 3.

Plaintiff also argues that because Dr. Looby-Gordon's assessment is the only medical opinion that addresses the post-September 2019 evidence relating to Plaintiff's left ankle disorder, the ALJ improperly interpreted the raw medical data in declining to

10

increase the restrictions in the RFC. See Docket # 16 at 9, 13, 15. The prohibition against ALJs interpreting raw medical data, however, "does not apply where the medical evidence shows relatively little physical impairment." Dias v. Colvin, 52 F. Supp. 3d 270, 281 (D. Mass. 2014) (quoting Stephens v. Barnhart, 50 F. App'x 7, 10-11 (1st Cir. 2002)). Here, the medical evidence relating to Plaintiff's left ankle disorder addressed by the ALJ demonstrated relatively little physical impairment. This is demonstrated by Dr. Looby-Gordon's September 2019 examination showing "no evidence of pitting edema or difficulty with ambulation"; Dr. Negron's notes from Plaintiff's February 2020 visit that her "neurovascular status was stable with no overt crepitation"; Dr. Negron's notes from Plaintiff's March 2020 visit that she "had general improvement in her pain," "her neurovascular status continued to be stable with no overt crepitation," and "[h]er foot could be manipulated at 90 degrees neutral and was generally in a position that allowed equal purchase of the heel"; and that Plaintiff and Dr. Negron decided to utilize a customized brace, the more conservative measure, instead of exploring a surgical option. R. 23-24.

Accordingly, Plaintiff fails to show any reversible error made by the ALJ in finding Dr. Looby-Gordon's opinion unpersuasive or in determining the RFC based on her left ankle disorder. See Rodriguez Pagan, 819 F.2d at 3; Harrison, 2021 WL 1153028, at *6.

**B.     The ALJ Accounted for Plaintiff's Reported Headaches**

Plaintiff next argues that the ALJ erred by failing to evaluate her reported migraines as a medically determinable impairment in accordance with SSR 19-4p. Docket # 16 at 10-13; Docket # 21 at 3-6. She asserts that her migraines were indeed primary headaches and thus a medically determinable impairment, and the proper evaluation by

the ALJ would have resulted in a more restrictive RFC that would have changed the outcome at step five of the evaluative process.

Even if the ALJ erred by not explicitly addressing Plaintiff's migraines pursuant to SSR 19-4p,[3] any such error was harmless. "An ALJ's failure to address a specific listing or to elaborate on [her] conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion." Vance v. Berryhill, 860 F.3d 1114, 1118 (8th Cir. 2017). SSR 19-4p explains that "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her [medically determinable impairment(s)] medically equals the listing." SSR 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019). As the SSR acknowledges, it would be uncommon for a primary headache disorder (which for purposes of this inquiry the Court assumes Plaintiff had) to be medically equivalent in severity to a dyscognitive seizure. This is likely so because, as the regulations note,

> Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.00(H)(1)(b). Dyscognitive seizures are therefore characterized by alteration of consciousness. See Jennifer M.A. v. Saul, No. 20-cv-2159-JWL, 2021 WL 1056426, at *9 (D. Kan. Mar. 18, 2021); Philip v. Saul, No. 8:19-cv-422, 2020 WL 4001162, at *18 (D. Neb. July 15, 2020). When they occur at least once a week for at least three consecutive months they are disabling (Listing

---

[3] The Court does not take a position on that question.

12

11.02(B)), and when they only occur at least once every two weeks for at least three consecutive months they require a marked limitation in physical or mental functioning (Listing 11.02(D)) to be presumed disabling. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.00(H)(1)(b). Here, Plaintiff does not identify any evidence in the record that would indicate that her migraines are equivalent in severity to an alteration of consciousness.

Moreover, the ALJ addresses the evidence of Plaintiff's migraines in her decision, including that in October 2018 she received an official diagnosis of migraine with typical aura by Dr. Newman for which she was prescribed Amitriptyline, the headaches occur every three days or so, when the headaches occur she experiences symptoms of movement and flashing in her vision as well as decreased vision, and her headaches worsened after an April 2019 car accident. R. 22-23. She also notes, however, that the record did not indicate that Plaintiff had any neurological deficits nor that she sought continued neurology treatment with Dr. Newman, and that the Amitriptyline is now prescribed by her psychiatrist for depression. R. 23-25. Based on this and the other evidence, the ALJ limited Plaintiff to understanding, remembering, and carrying out simple instructions for 2-hour intervals over the course of an 8-hour workday and 40-hour workweek in her RFC. The fact that the ALJ did not explicitly cite each relevant exhibit in her decision is not fatal; the ALJ is not obligated to address every single piece of evidence in the record. See NLRB v. Beverly Enter.-Ma., Inc., 174 F.3d 13, 26 (1st Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); Doshi v. Colvin, 95 F. Supp. 3d 138, 146 (D. Mass. 2015) (ALJ "is not required to, nor could he reasonably be expected to, discuss every piece of evidence in the record."). Accordingly, substantial evidence exists to

support the conclusion that Plaintiff's reported migraines were not a severe impairment under SSR 19-4p and that the RFC sufficiently accounted for any limitations they caused. See, e.g., Jennifer M.A, 2021 WL 1056426, at *8-9 (rejecting argument that ALJ erred by failing to address claimant's headaches under SSR 19-4p where Plaintiff failed to show headaches were equivalent in severity to Listing 11.02(B) and (D)).

### C. The ALJ Appropriately Evaluated the Limiting Effects of Plaintiff's Pain Symptoms Caused by Migraines and Left Ankle Disorder

Plaintiff finally argues that the ALJ erred in evaluating her symptoms—specifically, her pain and other symptoms related to her migraines and left ankle disorder—in accordance with SSR 16-3p. Docket # 16 at 16-19; Docket # 21 at 8-10.

SSR 16-3p provides for a two-step process for evaluating a claimant's symptoms: first, the ALJ must determine whether the individual has a medically determinable impairment "that could reasonably be expected to produce the individual's alleged symptoms"; second, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). In assessing the severity of an individual's symptoms, the ALJ must review the record and the claimant's daily living activities. Id. at *7; Coskery v. Berryhill, 892 F.3d 1, 7 (1st Cir. 2018). Although "activities which are 'sporadic' or 'transitory' in nature will not necessitate a finding that a person is capable of work-related activities, evidence that the individual routinely engages in such activities may contribute to a finding that the individual's symptoms are not significantly limiting." Bartlett v. Saul, No. 19-cv-11767-ADB, 2020 WL 5803156, at *9 (D. Mass. Sept. 29, 2020).

14

Here, the ALJ explicitly followed this two-step process in finding that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." R. 25. She then found, however, that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," and proceeded to review and analyze that evidence thoroughly. R. 25.

Regarding the first step, Plaintiff essentially repeats her argument addressed above that the ALJ improperly failed to find that Plaintiff's headaches are a medically determinable impairment. For the reasons explained above, this argument has no merit. *Supra* pp. 11-13.

Regarding the second step, the ALJ reviewed the objective medical evidence and assessments by the physicians as well as evidence that Plaintiff had engaged in daily living activities such as getting up and getting her children ready for school, cooking meals, making her bed, doing the dishes, reading the newspaper, going to the grocery store, assisting non-English speaking neighbors at appointments, and attending church services and events. R. 25-29. The ALJ found that these daily activities were not consistent with Plaintiff's allegations and that although Plaintiff testified to more limited range of daily activity, "two factors weigh[ed] against considering these allegations to be strong evidence in favor of finding the [Plaintiff] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Second[], even if the [Plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [her] medical condition, as opposed to other reasons, in view

of the relatively weak medical evidence and other factors discussed in this decision." R. 28.

As to the migraines, Plaintiff asserts that although the ALJ addressed Plaintiff's testimony about her migraines and the care she received from Dr. Newman, she ignores the care received after Dr. Newman from other practitioners and fails to cite Exhibit 6F, the notes from Dr. Caruso with his migraine diagnosis, in the decision. Docket # 16 at 17. Plaintiff further argues that the ALJ improperly discounted Plaintiff's subjective reports of the migraine symptoms, which she asserts are not contradicted by other evidence in the record. Id. at 17-18. As to the left ankle disorder, Plaintiff similarly contends that her "complaints regarding intensity, persistence, and limiting effects are supported by the record" and that the ALJ failed to explain how Plaintiff's activities translated into the ability to stand for six hours on a sustained basis after September 2019. Id. at 18-19.

Plaintiff's arguments, again, simply challenge how the ALJ weighed the evidence, which is not for this Court to undo. See, e.g., Rodriguez Pagan, 819 F.2d at 3. The ALJ's analysis sufficiently addresses the record evidence as a whole and demonstrates that there is substantial evidence to support the decision, including that Plaintiff can do light work under the conditions identified in the RFC. As explained above, the fact that the ALJ did not explicitly cite Exhibit 6F is not reversible error. See NLRB, 174 F.3d at 26; Doshi, 95 F. Supp. 3d at 146. Moreover, even if there is specific evidence in the record to support a different outcome, that is insufficient to reverse the Commissioner's decision. See, e.g., Rodriguez Pagan, 819 F.2d at 3.

IV.   **Conclusion**

Plaintiff's Motion for Order Reversing the Commissioner's Decision (Docket # 16) is DENIED and Defendant's Motion to Affirm the Commissioner's Decision (Docket # 19) is ALLOWED.

March 23, 2022
DATE

/s/ Rya W. Zobel
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE